[No. 24709. Department One.   October 5, 1933.]

ORVILLE C. PORTER *et al., Respondents,* v. SMART'S AUTO
FREIGHT COMPANY, INC., *et al., Appellants.*[1]

*Shank, Belt & Rode,* for appellants.
*Thos. L. O'Leary,* for respondents.

MITCHELL, J.—This action was brought on account
of damages suffered by Mr. and Mrs. Orville C. Porter
by reason of a collision between their automobile in
which they were riding and a large piece of machinery
that fell off an auto freight truck or trailer operated
by appellant Smart's Auto Freight Company, Inc., as
a common carrier.   It was charged that the collision
was caused by the negligence of the freight company,
which charge of negligence was denied.   The trial
without a jury resulted in findings of fact, conclusions
of law and judgment for the plaintiffs, from which
judgment the appeal has been taken.

[1]Reported in 25 P. (2d) 576.

The assignments may be considered upon the claim of the appellants that the court erred in finding that the freight company was guilty of any negligence.

Substantially, the facts were about as follows: The auto freight company, that may be spoken of as appellant, was carrying a large piece of cast-iron machinery, weighing about 2,229 pounds, from Seattle to Portland. The vehicles used for transporting it were a large truck and a large trailer, both being enclosed and in charge of only a driver. It appears that the piece of machinery was taller than the inside of the trailer, but that it could be laid down on the floor of the trailer. However, in making up the load in Seattle, the piece of machinery was placed on the outside of the body of the trailer and on the tail-gate, which was dropped to the level of the floor of the trailer, the tail-gate being supported by a three-eighths inch chain. A rope was put around the piece of machinery so as to hold it on the tail-gate.

Proceeding along the Pacific highway about 10:30 o'clock at night, upon arriving at a point three miles east of Olympia, while going down a hill at a speed of thirty-five to forty miles an hour and rounding a curve to the driver's right, the piece of machinery slipped or broke loose from its fastening, fell out on the left-hand side of the highway, came into collision with respondents' automobile traveling in the opposite direction and on its own right-hand side of the highway, severely injuring both respondents and demolishing their automobile. The respondents, who were driving in a prudent manner and at a reasonable rate of speed, had no notice of or chance of seeing the danger before their automobile was struck. The driver of the truck continued on to Olympia without knowing that he had lost the piece of machinery.

The driver of the truck testified that the piece of

machinery was fastened only by a rope over and around it from side to side of the rear of the trailer five or six times. The rope used was a small one. In some of the testimony, a five-eighths inch rope or the strength of such a rope was spoken of, but the driver of the truck, on cross-examination, in speaking of the rope used on this occasion, testified: ''I think it was a three-eighths rope.'' He further testified that the rope ''was broken in two or three different places.''

Appellant claims that the giving away of the tail-gate chain containing a link with a latent defect was the cause of the accident; but, aside from the charge of negligence in putting such a heavy piece of machinery on the tail-gate instead of laying it down in the trailer, of which there was abundant proof to satisfy the trier of the facts, the testimony, directly and by necessary inference, preponderatingly shows negligence in the manner of fastening the piece of machinery to the trailer. The driver of the truck was familiar with the highway, having traveled over it about every day for several years. There was direct testimony that, from Seattle to the scene of the accident, about sixty miles, the highway abounds in curves and hills and many uneven places on the surface of the highway. An experienced truck driver testified:

''Q. What would be the tendency to movement, if any, of that machinery—assuming that it weighs something in excess of twenty-two hundred pounds—what would be the tendency to movement, if any, so loaded on the tail-gate of that truck? Mr. O'Leary: I think the question isn't quite long enough and I would like to add another assumption to it. Mr. O'Leary: Q. Assuming that the piece of machinery,—you saw this particular piece of machinery? A. Yes. Q. Well, assuming this piece of machinery was of the height you know it? A. Why, I should think it would be inclined

to move and try to get out, considering the shape of that machinery and the height, and lashed with a rope as it was. Q. Is there any give to rope? A. Certainly. Q. What amount of give in inches—does that depend to any extent upon the length of the rope? Would the give be so much per foot? A. Well, it would depend upon the condition of the rope. Q. Would the length of the rope have anything to do with the tendency to give? A. Certainly, the longer it is the more give. Q. Would the height of this machinery have anything to do with the tendency to move? A. It certainly would. The more weight you get up there the more apt it is to swing around. Q. Where would that tendency to move exist—would it be increased as the truck went around the curves, or would it be lessened? A. It would be increased—pulling out on the tailgate."

And this testimony is according to the reason of the matter. A rope under such circumstances will soon be destroyed by the jolting of a truck and the swinging, sliding motion of heavy machinery, flying away from the center of its weight, as it is constrained to move in a circular path from time to time, first one way and then the other, in going around curves, especially where, as here, the truck carrying it travels twenty-five to forty miles an hour.

The trial court made, among others, the following findings:

"(5). The court finds that the collision between the car driven by the plaintiff, Orville C. Porter, and the said machine was due to the negligence, carelessness, recklessness, and unlawful act of the defendant freight company in loading a heavy piece of machinery on the tail gate of the trailer, it being of great size; and the further negligence in the failure to properly and securely fasten the said machine so that it could not fall from the tail gate onto the highway; and the further negligence in carelessly and recklessly driving the said truck so that the said machine was placed on

the wrong side of the pavement; that said damages grew out of and occurred by reason of the ownership, maintenance and/or use of the truck and trailer described above.

"(6). The court finds that by reason of the collision between the car of the plaintiff and the said machine, the impact broke off a part of the said machine, which extended upward some eight (8) or nine (9) feet and is about a foot and a half in diameter, and this part of the machine, weighing about 400 pounds, crashed through the top of the automobile, landing at a point between the plaintiff, Orville C. Porter, and his wife, totally demolishing the automobile, and causing the physical injuries to the plaintiffs as hereinafter set forth."

In our opinion, the complaint of negligence was sustained by the preponderance of the evidence.

Judgment affirmed.

BEALS, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.